The trial court found that the plaintiff was employed as a salesman by the defendant, *Page 593 
Who was engaged in business as a real estate broker in Glastonbury. Under their agreement the plaintiff was to receive as compensation 20 percent of the commissions payable for properties on which he obtained listings and 30 percent of the commissions payable for properties which he sold. After a dispute arose, the plaintiff terminated his employment with the defendant and brought this suit for the amount claimed to be due him under the employment contract. The trial court rendered judgment in his favor for $1350.22, a sum which represented his share of the commissions received by the defendant on the sale of several houses where the transactions had not been completed at the time the plaintiff terminated his employment with the defendant.
The principal claim of the defendant on this appeal is that the legal theory relied on by the trial court in rendering judgment was outside the scope of the complaint. The plaintiff had alleged that under the terms of the employment agreement he Was entitled to receive "twenty percent of all commissions payable for all real property on which he obtained listings and `the sum of thirty percent of all commissions payable for all real property that he sold, which was also the custom of the real estate trade." In a more specific statement which he filed the plaintiff referred to a listing which he had "obtained" and four sales which he had "effected." Counsel for the plaintiff also stated during the argument of a motion for nonsuit at the close of the plaintiff's evidence that his cause of action was based on "what a real estate agent — real estate salesman — would ordinarily have to do in order to complete the sale . . . or the listing."
In rendering judgment for the plaintiff the trial court found that it was a part of the employment agreement that the defendant would assist his *Page 594 
salesman to acquire listings and to consummate sales without diminution of the salesman's share of the commission and also that the salesman who made the initial contact with a prospect would be identified as the "effective salesman." We find nothing in the complaint which would have precluded the trial court from relying on those conclusions in deciding the case. The complaint alleged the breach of an employment agreement and set forth its essential terms. From the evidence, including particularly certain testimony of the defendant on cross-examination, the trial court found that under the arrangement between the parties the initial contact with the customer would determine whether a salesman would be entitled to receive his share of the commission where the defendant also had performed services to help consummate the transaction. The complaint did not limit the plaintiff to the claim that he was the "predominating producing cause of the sale," as if he were merely a broker claiming a commission against an owner. See Busker v. United Illuminating Co., 156 Conn. 456,465. Neither could the defendant have been misled by the remark of counsel for the plaintiff quoted above, since the trial court responded that it was assumed "through the presentation of evidence that it was on employment rather than what a real estate agent or broker had to do." If there was any variance, it was immaterially "An immaterial variance is one in which the difference between the allegations and the proof is so slight and unimportant that the adverse party is not misled as to the charge he is required to meet or prejudiced in maintaining his defense on the merits of the case." Strimiska v. Yates,158 Conn. 179, 184. "A variance in the factual aspect of a case which does not prejudice the opponent, and which does not change the theory of the cause of action, should not under ordinary circumstances be allowed to make voidable an *Page 595 
otherwise sound judgment." Schaller v. Roadside Inn, Inc., 154 Conn. 61, 65. Accordingly, we reject the claim of fatal variance which the defendant has raised.
The defendant has not briefed any of his assignments of error relating to the subordinate facts stated in the finding. He relies on the claim that the subordinate facts do not support the conclusion of the trial court that the plaintiff was entitled to his share of the commissions received on each of the five sales involved. It appears that each of those sales was completed after the plaintiff had terminated his employment "justifiably," as found by the trial court, because the defendant refused to pay him a commission he had earned. The plaintiff was told expressly not to contact any of the customers involved in those transactions after his employment by the defendant ceased. The trial court concluded, therefore, that he was excused from performing any further services in respect to those transactions. The fact that the defendant may also have performed substantial services in connection with those transactions is not inconsistent with the conclusion of the court that under the employment agreement the plaintiff was entitled to his share of the commissions because he had been the "effective" salesman. It was not necessary to find that the plaintiff was the "predominant procuring cause of the sale" of the houses involved, because the employment agreement, as the trial court concluded, did not establish that standard for determining whether the plaintiff had earned his share of the commissions. That conclusion is adequately supported by the subordinate facts found as well as the evidence.
The assignments of error directed to the rulings on the evidence have not been briefed and are *Page 596 
deemed to have been abandoned. First Connecticut Small Business Investment Co. v. Arba, Inc.,170 Conn. 168, 170.
 There is no error.
A. ARMENTANO, D. SHEA and SPONZO, Js., participated in this decision.